UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


UNITED STATES OF AMERICA

v.                                          CASE NO.   8:12-cr-318-T-23TGW
                                                       8:15-cv-211-T-23TGW
LARUE TERRY
_____/


**O R D E R**

Terry's motion to vacate under 28 U.S.C. § 2255 (Doc. 1) challenges the

validity of her conviction for conspiracy to commit wire fraud affecting a financial

institution, for which offense she is imprisoned for twenty-seven months.  Rule 4,

Rules Governing Section 2255 Cases, requires both a preliminary review of the

motion to vacate and a summary dismissal "[i]f it plainly appears from the face of the

motion, any attached exhibits, and the record of prior proceedings that the moving

party is not entitled to relief . . . ."  *Accord Wright v. United States*, 624 F.2d 557, 558

(5th Cir. 1980)[1] (finding the summary dismissal of a Section 2255 motion was proper

"[b]ecause in this case the record, uncontradicted by [defendant], shows that he is not

entitled to relief"); *Hart v. United States*, 565 F.2d 360, 361 (5th Cir. 1978) ("Rule 4(b)

[Rules Governing § 2255 Proceedings], allows the district court to summarily dismiss

---

[1]  Unless later superseded by Eleventh Circuit precedent, a Fifth Circuit decision issued
before October 1, 1981, binds this court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th
Cir. 1981) (*en banc*).

the motion and notify the movant if 'it plainly appears from the face of the motion

and any annexed exhibits and the prior proceedings in the case that the movant is not

entitled to relief . . . .'"").  Terry's motion lacks merit because in the plea agreement

Terry waived the right to raise the grounds she asserts in the motion to vacate.

## FACTS[2]

LaRue Terry was a principal of Sunmark Title Insurance Group, Inc., located in Port Richey, Florida. While working through that entity, Terry conspired with others to defraud residential mortgage lenders, including federally-insured banks, by making material false statements directly bearing on the creditworthiness of prospective borrowers. Terry knowingly and willfully participated in two fraudulent residential real estate transactions, one involving 14707 Coral Berry Drive in Tampa and the other 1208 Florida Street in Key West, as part of the conspiracy.

In both of those real estate transactions, LaRue Terry was the title agent who oversaw the settlement conferences. She orchestrated the submission of material false statements relating to the borrowers' equity contributions (down payments) to the lenders. Viktoria Bloom, a mortgage broker involved in the Key West transaction, provided the down payment funds for that transaction, through a wire transfer of over $200,000 of Bloom's own funds. The borrower's down payment that was required for the Coral Berry transaction was provided by LaRue Terry and Debra Robinson. In each of these transactions the funds provided for the borrower's purported down payment were returned to the persons who provided them, along with fees for the short-term use of the funds at the closing. Disbursements at the closings that were fraudulently characterized as *lien payoffs* were made to the benefit of Bloom, LaRue Terry, and Robinson. In both transactions LaRue Terry was the title agent who oversaw the settlement conferences. She orchestrated the submission to the lenders of material false statements relating to each borrower's down payment.

---

[2]  This summary of the facts derives from the plea agreement (Doc. 25 at 18-19) (italics original).

## GROUNDS

Terry asserts three grounds,[3] which includes two grounds of ineffective

assistance of counsel.  First, Terry alleges that counsel was ineffective for not

conducting a proper investigation, specifically, failing to question certain witnesses.

Second, Terry alleges that her right to remain silent was violated because she was

never read her *Miranda* rights.  Third, Terry alleges that counsel was ineffective for

not clarifying for the district court that she held no ownership in Sunmark Title. Each

claim is waived by the plea agreement.

Terry pleaded guilty under the favorable terms of a plea agreement.  (Doc. 28

in 13-cr-626)  *Tollett v. Henderson*, 411 U.S. 258, 267 (1973), holds that a guilty plea[4]

waives a non-jurisdictional defect:

> [A] guilty plea represents a break in the chain of events which
> has preceded it in the criminal process. When a criminal
> defendant has solemnly admitted in open court that he is in fact
> guilty of the offense with which he is charged, he may not
> thereafter raise independent claims relating to the deprivation of
> constitutional rights that occurred prior to the entry of the guilty
> plea.

This waiver of rights precludes most challenges to the conviction.  "[W]hen the

judgment of conviction upon a guilty plea has become final and the offender seeks to

reopen the proceeding, the inquiry is ordinarily confined to whether the underlying

---

[3] The motion to vacate identifies the grounds as one, two, and four, which latter ground this order considers as ground three.

[4] A conviction based on a plea of nolo contendere is reviewed the same as a conviction based on a guilty plea. *Wallace v. Turner*, 695 F.2d 545, 548 (11th Cir. 1982).

plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569 (1989).  *See also United States v. Patti*, 337 F.3d 1217, 1320 (11th Cir. 2003) ("Generally, a voluntary, unconditional guilty plea waives all non-jurisdictional defects in the proceedings."), and *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) ("A defendant who enters a plea of guilty waives all non-jurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained.").  A guilty plea waives a claim based on a pre-plea event, including a claim of ineffective assistance of counsel. *Wilson*, 962 F.2d at 997.  Consequently, the entry of a guilty plea waives a claim (other than a jurisdictional challenge or a challenge to the voluntariness of the plea) — including both a substantive claim and a purported failing of counsel — that occurred before entry of the plea.

Terry waived her first claim (ineffective assistance of counsel for not conducting a proper investigation) and her second claim (she was not read her *Miranda* rights) when she voluntarily pleaded guilty, and she waived her third claim (ineffective assistance of counsel for not correcting her alleged lack of ownership) under the terms of the plea agreement.  In the plea agreement, Terry admitted that she "was a principal of Sunmark Title Insurance Group, Inc." (Doc. 25 at 18)[5] When she pleaded guilty Terry understood that she was waiving her opportunity to present

---

[5] When she pleaded guilty, Terry disagreed with the statement that she was a "principle" as compared to an "employee" (Doc. 58 at 10–11), and at sentencing she represented to the district court that she was an "employee" of the complany. (Doc. 59 at 35)

a defense to the charges, including her belief that trial counsel should have investigated certain witnesses (Doc. 58 at 15–17):

> THE COURT: Let me, therefore, explain to you certain rights you have if this case went to trial. You would, of course, be entitled to be represented at the trial by your lawyer, and you would be entitled to be represented at all stages of the proceedings by a lawyer, and if you could not afford to hire a lawyer one could be appointed for you at no expense to you.
>
> Under the law, you would be presumed to be innocent of this charge, and before you can be convicted the government would have to prove that you're guilty of the offense beyond a reasonable doubt. You would have a right to have a jury of 12 people hear your case. And all 12 jurors would have to agree unanimously that you're guilty beyond a reasonable doubt before you could be convicted.
>
> At the trial the government would call witnesses and you would have a right to cross-examine any witnesses called by the government. You could call witnesses in your own defense and you could use the Court's subpoena power to make witnesses come to court even if they did not want to. You could testify in your own defense, if you wish to do that. On the other hand, the government couldn't force you or compel you to testify if you did not wish to do so. Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you understand that by pleading guilty you give up all of those rights and that there would be no trial?
>
> THE DEFENDANT: Correct, I do.
>
> THE COURT: Similarly, if there's any defense to this charge, any defense that you have is lost by a plea of guilty. Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: You're represented by Mr. Hall. Have you had a full opportunity to discuss this case with him?

THE DEFENDANT: Yes.

THE COURT: And with respect to your decision to plead guilty, do you think you need anymore time to discuss that matter with him?

THE DEFENDANT: No.

THE COURT: And you've indicated earlier that you were thinking he should have contacted some witnesses, and Mr. Hall has responded to that. Is there anything else you think he should have done that he did not do in this case?

THE DEFENDANT: No.

Trial counsel assured the magistrate judge both that no additional time for pretrial preparation was necessary and that Terry understood the consequences of pleading guilty (Doc. 58 at 32–32):

THE COURT: Mr. Hall, have you explained the charge in Count One to the defendant?

MR. HALL: I did.

THE COURT: And are you satisfied that she understands it?

MR. HALL: Yes.

THE COURT: Have you had a full opportunity to investigate the law and the facts in this case?

MR. HALL: Yes.

THE COURT: Do you think you need anymore time to do that?

MR. HALL: I don't.

THE COURT: Are you satisfied that the defendant is pleading guilty freely and voluntarily?

MR. HALL: Yes.

> THE COURT: Are you satisfied that she fully understands the
> consequences of pleading guilty?
>
> MR. HALL: Yes.

Thereafter Terry stated that she had no "concerns" that she wanted to express

(Doc. 58 at 32):

> THE COURT: Ms. Terry, do you have any questions
> concerning any of these matters that we have discussed?
>
> THE DEFENDANT: No.
>
> THE COURT: Do you have any questions relating to this case
> about anything we have not discussed?
>
> THE DEFENDANT: No.

These admissions bind Terry.  See *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977)

("[T]he representations of the defendant . . . [at the plea proceeding] as well as any

findings made by the judge accepting the plea, constitute a formidable barrier in any

subsequent collateral proceedings.  Solemn declarations in open court carry a strong

presumption of verity.").

Accordingly, the motion to vacate the sentence (Doc. 1) is **DENIED**.  The

clerk must enter a judgment against Terry and close this case.

### DENIAL OF BOTH A
### CERTIFICATE OF APPEALABILITY
### AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Terry is not entitled to a certificate of appealability ("COA").  A prisoner

moving under Section 2255 has no absolute entitlement to appeal a district court's

denial of her motion to vacate.  28 U.S.C. § 2253(c)(1).  Rather, a district court must

first issue a COA.  Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right."  To merit a certificate of appealability, Terry must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues she seeks to raise.  *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because she fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Terry is entitled to neither a certificate of appealability nor an appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**.  Leave to appeal *in forma pauperis* is **DENIED**.  Terry must obtain authorization from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on December 7, 2015.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE